## DAVID R. WINGATE, Administrator, v. JANE WHEAT et al.

A foreign administrator, having given ample bonds, has a right to sue for property fraudulently brought to this State, belonging to his intestate. An administrator is considered by relation as being in possession of the property of an estate from the date of the decease of the intestate.

APPEAL from the District Court of Washington, *Stirling*, J. *Jesse R. Jones*, for plaintiff. The judgment of the court was pronounced by

PRESTON, J. The plaintiff, as administrator of *Joseph Wheat*, sues the defendants for eight slaves, which he alleges belongs to the estate of the

deceased. He was appointed and qualified by the Probate Court of Marion County, in the State of Mississippi,

He alleges, and establishes by a duly certified copy of the records of that court of the proceedings as to the estate of *Joseph Wheat*, the following facts: That he died in that State and county, intestate, and without children, in the month of August, 1845. He left a plantation, eight slaves, and some movable property. His widow, *Jane Wheat*, survived him. On the 16th of March, 1846, she was appointed, qualified, and gave security as administratrix of her deceased husband's estate. She made an inventory, to the truth of which she attested on oath, and in which the eight slaves for which the present suit is brought are stated to be the property of the estate.

In January, 1847, she applied to the court, and obtained an order for the sale of the slaves, as the property of her deceased husband's estate, for the purpose, as stated by her, of making a distribution among his heirs. She named, as his heirs, a sister and several nephews and nieces. *Willliam Wallis*, one of the present defendants, and his wife purchased six of the slaves, and *Mrs. Wheat*, the administratrix, the other two; and the sale was confirmed by the judge of the court of probates, on the 16th of March, 1847.

On the 15th of March, 1847, the day before the confirmation of the sale of the slaves, the sureties of *Mrs. Wheat*, as administratrix of the estate, applied to the court to compel her to give them counter-security, or to execute a new bond as administratrix, on the ground that they were in danger of suffering on account of being her sureties. She refused to do so, and the court thereupon revoked her appointment as administratrix, and committed the administration of the estate to the sureties, *Daniel Felder* and *William M. Rankin*.

In May, 1847, they sued *Mrs. Wheat* and *Elias Wallis and wife*, to annul the sale to them of the slaves, on the ground that it was a fraudulent sale. On the 21st of July, 1847, the court, after hearing testimony, and the exceptions and arguments of the counsel of the defendants, annulled the sales of the slaves, for the reasons alleged by the administrators in their petition, and also on the ground that they were not only voidable but void *ab initio*. In the progress of the suit, they alleged and made oath to their fears that the defendants would remove the slaves out of the State, and obtained an order of the sheriff to seize them. He succeeded in obtaining possession of four of them, *Toby, March, Clarissa* and *Maria*, in August, 1847. The administrators applied for and obtained an order to hire out, at public auction, these four slaves until the 25th of December, 1847. *Elias Wallis*, one of the defendants in the present suit, bid them off, and gave *Jane Wheat*, the other defendant, as his security for their hire. *Felder* and *Rankin* then applied to be, and were released, as administrators; and on the 21st of September, 1847, *David R. Wingate* was duly appointed administrator, *de bonis non*, on the estate, to whom the note for the hire of the slave was delivered.

This appointment, we consider, transferred to him not only the possession of his immediate predecessors in the administration of the four slaves which had just been hired by them, but entitled him to all the rights of all previous administrators to any property of the estate of which the administration remained incomplete.

Mr. Greenleaf lays down the principle as follows: "An executor or administrator has the property of the goods of his testator or intestate vested in him before his actual possession, and therefore may have trover or trespass against

one who has taken them. And although he does not prove the will or receive letters of administration for a long time after the death of the intestate, yet the property will be adjudged to have been in him by relation immediately upon the decease." Vol. 2, sec. 641.

The facts detailed leave no doubt of the tortious conversion by the defendants to their own use of eight slaves belonging to the estate of *Thomas Wheat ;* that they unlawfully removed four of them from the State of Mississippi, while a suit was pending against them by the administrators for the slaves, and which terminated in a judgment against them ; . and that they, in like manner, removed four others from the possession of an administrator, and by him hired to them, and that their possession afterwards, at least, was in bad faith, and has continued so from that time until the present.

The defendants were found in possession of the eight slaves in Louisiana, and at the suit of the present administrator, they were sequestered by the sheriff of Washington parish, on the 21st of February, 1849.

*Wallis* answered to the suit that *Jane Wheat* had dispossessed him by suit ; and she answered that she held them by the judgment of the district court for that parish, obtained by her against *Wallis.* She gave in evidence the record of a suit brought by her, as a resident of Marion County, State of Mississippi, against *Wallis*, for seven of the slaves. The petition was filed in the district court for the parish of Washington, on the 21st day of October, 1847. An answer was filed by the defendant the same day, and judgment entered and signed by the district judge the next day, by which she recovered the slaves.

This occurred within a month after four of the slaves had been hired by the administrator to *Wallis*, of whom *Jane Wheat* became the security for the payment of the hire. If this suit was a *bonâ fide* suit, the recovery by *Mrs. Wheat* of the slaves would have inured to the benefit of her deceased husband's estate, to which she had, during that and the preceding year, in judicial proceedings, as administratrix, declared under oath that they belonged. If it was a fraudulent suit, it was a flimsy veil to cover their fraud in running off part of the slaves from the State of Mississippi, at the very moment when lawful administrators were suing them for, or had obtained judgment against them for the slaves, and the other half from the possession of the administrators from whom they had hired them.

They also produced a paper purporting to be a copy of a private bill of sale of *Rose*, one of the slaves and mother of the rest, to *Jane Wheat*, purporting to be dated in 1818, and recorded in the parish of Washington, in August, 1847. *Jane Wheat* was then a resident of Mississippi, by the showing of her petition, filed two months afterwards, and had no honest motive to record her titles in Louisiana. But six months before it was recorded she held the slaves in Mississippi, as administratrix of her husband's estate ; and but a month before, the administrators who succeeded her recovered judgment for the slaves in Mississippi against her and *Wallis.*

It remained unrecorded for thirty years, and was not exhibited when it was needed in the State of Mississippi, but at that moment is recorded in Louisiana, where the owner of the slave did not reside, and where the slave should not have been. It is used a single day as the basis of a judgment rendered in a suit the day after issue joined ; was then withdrawn from the record ; is lost, though essential to the defence of a suit that must afterwards take place, and is not produced on the trial of that suit, but a copy, without proof of its loss.

This copy of the sale of the slave *Rose* was illegally admitted in evidence, and an exception taken. The original is believed to have been manufactured to complete, in this State, the frauds commenced in the State of Mississippi: and whether it was a true or false bill of sale, and whether made in Louisiana or Mississippi, by its very terms, in selling to *Jane Wheat*, vested the slave and her issue in *Joseph Wheat*, her husband. Our courts should not be made handmaids to these vile attempts to defeat the lawful administration and legal distribution of property in a sister State. We should not interfere more than possible with the property of citizens of other States, or the jurisdiction of their courts. We have discountenanced it as much as possible, by dissolving attachments of property brought into this State for the express purpose of being attached, by enabling sheriffs and administrators of other States to pursue property in this State taken from their possession, by aiding parties to restore to the place where it should be, property, where the courts of our sister States had in any manner jurisdiction over the subject matter; and in many other cases and modes, as the recent decisions of the court abundantly show. 1st Ann. 49. *Paradise* v. *The Farmer's Bank of Memphis*. *McKee* v. *Amonett et al.*

On the trial of the cause, the defendants filed what they called a peremptory exception, founded in law, to the suit, that *Wingate* was not recognised as administrator by our courts, or under our laws. It is not a peremptory but a dilatory exception to his capacity to sue. But even if it was a peremptory exception, it was only as to form, and in either case the defendants waived it by filing general and special defences on the merits, and the district court properly disregarded it. C. P. 333. 4 L. R. 328. 2d Ann. 1017.

If it had been filed in time, it was not well founded in law, in the present case. A foreign administrator, having given ample bonds, as in this case, has a right to sue for property fraudulently brought to this State, belonging to his intestate. 2 N. S. 17. 1st Ann. 48. 2d Ann. 430. 2 Greenleaf on Evidence, as quoted above.

There are few cases in which the allegations in the petition and evidence in support of them could more strongly fortify the right and demonstrate the necessity of the principle than the present.

The district court gave judgment against *Wallis*, for one of the slaves. He should, in like manner, have rendered judgment against *Mrs. Wheat* for the remainder.

It is therefore ordered, adjudged and decreed, that the judgment of the court below be reversed. And it is further ordered and decreed, that the plaintiff *David R. Wingate*, in his capacity of administrator *de bonis non* of the estate of *Thomas Wheat*, deceased, recover from the defendants, *Jane Wheat*, *Elias Wallis*, *Martha Wallis*, and *William Wallis*, the slaves *Toby*, *March*, *Clarissa*, *Maria*, *Tom*, *Peter*, *Rose*, and *David*, described in the petition, with costs in both courts.